# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>KELVIN LEE ROSS,<br><br>    Defendant. | No. CR17-4071-LTS<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

_____

This matter is before me on a Report and Recommendation (R&R) (Doc. No. 40) in which the Honorable Kelly K.E. Mahoney, United States Magistrate Judge, recommends that I grant in part and deny in part defendant's amended motion (Doc. No. 29) to suppress.[1] Defendant Kelvin Ross has filed objections (Doc. No. 51) and the Government has filed a response (Doc. No. 53).

## I. BACKGROUND

### A. *Procedural History*

On November 30, 2017, the grand jury returned an indictment (Doc. No. 4) charging Ross with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851, and 846 and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 851. Co-defendant William Hill was charged with the same two counts and co-defendant Shane Monell was charged with the conspiracy count only.

---

[1] Because Ross' amended motion (Doc. No. 29) to suppress presents the same issues as his initial motion (Doc. No. 22) to suppress, with one additional issue, Judge Mahoney's recommendation applies to the initial motion as well.

Ross filed a motion (Doc. No. 22) to suppress on January 16, 2018. The Government filed a resistance (Doc. No. 25) on January 30, 2018. Ross then filed an amended motion (Doc. No. 29) to suppress and response (Doc. No. 30) to the Government's resistance on March 1, 2018. Judge Mahoney held a hearing on March 13, 2018. The following exhibits were admitted into evidence:

- Government Exhibit 1 – a copy of the registration card for the Town and Country Motel

- Government Exhibit 2 – a copy of the state search warrant for Ross' vehicle and room 33 at the Town and Country Motel

- Government Exhibit 3 – a photo outside room 33 at the Town and Country Motel

- Government Exhibit 4 – a photo of the general layout of the Town and Country Motel

*See* Doc. No. 31. The Government also presented testimony from the following witnesses: Heather Albrecht, Brian Hunt, John Howard, Brenton Heald, Eric Davis and Paul Yaneff. The parties presented their final arguments on March 26, 2018. *See* Doc. No. 35.

Judge Mahoney issued her R&R (Doc. No. 40) on April 11, 2018. Ross filed his objections on April 17, 2018, and the Government filed its response on April 19, 2018. Trial is scheduled to begin May 7, 2018.

## B. *Relevant Facts*

Judge Mahoney summarized the following relevant facts in her R&R based on the affidavit submitted with the search warrant (Doc. No. 25-2 at 5-7) and testimony presented during the suppression hearing:

> On the morning of November 8, 2017, Officer Albrecht received information from a confidential informant about a drug deal involving Monell. The informant relayed that Monell had called, asking whether the

informant wanted to buy methamphetamine. Monell had explained that a source from California had spent the night in Omaha and was on the way to Sioux City with five pounds of methamphetamine. Based on this information, officers set up surveillance of Monell's residence in Dakota City, Nebraska.

Monell called the informant and asked the informant to meet him at Monell's father's house in Sioux City, Iowa, and officers followed Monell there. Around 2:18 p.m., a gray Kia with California license plates arrived at Monell's father's house. The driver of the Kia (later identified as Hill) went into the residence for a few minutes. Around the same time, the informant advised officers that Monell had said, "it's on," "come over," and "[his] California guy was here and staying at a hotel waiting for money." Around 2:25 p.m., Monell and Hill exited the house. Monell left in his vehicle, and Hill went back into the house. Some officers remained at Monell's father's house, while others followed Monell.

Officers arrested Monell for traffic violations and took him into custody. Monell told officers that he had previously purchased 1¼ pounds of methamphetamine from Hill (who he referred to as Will) and that Hill had come to town to deliver five pounds of methamphetamine. Monell also said "his guys" and "they" were coming with methamphetamine, implying that more people were involved than just Hill.[2] Monell said that he had not yet seen the drugs, but he believed they were in Hill's car parked at his father's residence. While officers (including Officer Davis) interviewed Monell, Officer Albrecht prepared a search warrant application for the gray Kia that Hill had driven to Monell's father's house and that was still parked there. During this time, Officer Albrecht heard Monell's phone ring several times, and she also saw text messages appear on the phone's lock screen from a contact named "Kelsey Monell," informing Monell that his "packages" had arrived and asking when he would return. Officer Albrecht obtained a search warrant for the gray Kia driven by Hill, which was eventually searched at the police station because it was starting to get dark, but officers did not find a "large amount" of methamphetamine.

---

[2] The affidavit does not include that Monell used the term "his guys." It states that during Monell's interview, Monell said when he called Hill and asked where he was, Hill said "he [wa]s on his way and 'they' are coming soon after him to deliver the meth[amphetamine]." Doc. 25-2 at 6.

At some point while Officer Albrecht was appearing before a judge to obtain a search warrant for the gray Kia, Hill exited Monell's father's house, which was still under surveillance, and he was arrested. Officers recovered two cell phones: an iPhone on Hill's person and a flip phone that he had thrown under his vehicle when he saw officers approaching. A few hours after officers had obtained the phones, Agent Hunt observed text messages from a California area code popping up on the iPhone's lock screen, which read, "Where you at, cuzo?"; asked why Hill was not answering his phone; directed Hill to find "us" another hotel; and stated that if Hill did not respond, "we" are hitting the road.[3]

Officer Albrecht searched the phone number sending text messages to Hill's phone on Facebook and discovered that the phone number was linked to Ross' Facebook account (which included a picture of Ross). Officers (including Officer Howard) began searching hotels in the area for vehicles with California license plates and running the license plates in the system to see if any belonged to Ross. Officer Howard found a rental vehicle with California plates, a minivan at a Holiday Inn, but Ross was not registered at the hotel, and officers moved on. Around 8:00 p.m., officers eventually discovered a dark blue Kia with California plates registered to Ross parked at the Town and Country Motel, which was located "within a mile" of Monell's father's house. The vehicle registration listed an address for Ross in Palm Springs, California. Although Ross was not registered at the motel, motel employees informed officers that a woman named Karina Watts from Carson, California, had rented room 33 and listed a Kia with California plates on her motel registration card. Doc. 25-1; Doc. 32 at 17. The license plate number of the Kia registered to room 33, however, differed from Ross' vehicle and the vehicle driven by Hill. Doc. 25-1; Doc. 25-2 at 6; Doc. 32 at 17, 19. Ross' vehicle was parked directly in front of room 33, and no other vehicles were parked nearby. Officers conducting surveillance kept eyes on the vehicle registered to Ross from the time it was discovered until it was eventually searched, and it remained parked in front of room 33 the entire time. Officer Howard assisted in surveillance of the vehicle when it was discovered, and at one point, he observed a person he believed to be Ross walk from near Ross' vehicle to

---

[3] Agent Hunt testified that based on those text messages, he believed there was a "follow car" in Sioux City that they had not previously been aware of and that Ross had come with Hill to Sioux City to distribute methamphetamine. Doc. 32 at 39. As a result, he directed officers to begin looking for another vehicle from California. No additional testimony was elicited about the meaning or significance of a "follow car."

4

the restaurant parking lot where Officer Howard and his partner were parked. Officer Howard and his partner then left because Ross appeared to be looking at them in concern (and other officers had arrived to continue surveillance).

Officer Albrecht prepared a search warrant, application, and affidavit, seeking to search Ross' vehicle and room at the motel (room 33). The affidavit set forth some of the information about Monell obtained from the confidential informant and the information about Hill gathered during the interview with Monell, as well as the officers' observations while surveilling Monell's father's house. Doc. 25-2 at 6. The affidavit included the text messages officers had observed on Monell's and Hill's phones (and linked the text messages to Hill as being from Ross). *Id.* The affidavit also described the officers discovering the vehicle registered to Ross at the Town and Country Motel. Doc. 25-2 at 6-7. The only information about room 33 was that "owners indicated that room 33 is rented to [Watts] of Carson, [California,] and listed [Ross'] vehicle on the hotel" registration card. *Id.*[4] Finally, the affidavit included belief statements:

> From my experience as a police officer, and through conversations with other law enforcement officers, . . . I am . . . aware that drug dealers will use vehicles as safe houses to hide their illegal drugs and to transport illegal drugs from one point to another . . . . I am also aware that drug dealers often use electronic pagers and cellular telephones as tools in illegal drug trafficking. . . . Based on my training and experience I know it is not uncommon for large drug dealers to show up at a buy location without any drugs. I know large drug dealers want to see the money before showing the drugs to the buyer and they will keep the shipment of methamphetamine close for quick retrieval.

Doc. 25-2 at 5, 7. The affidavit did not state that the vehicle Hill drove to Monell's father's residence had been searched earlier in the day. Neither

---

[4] The affidavit says that the "hotel reservation" for room 33 listed Ross' vehicle. Doc. 25-2 at 6-7. From the testimony at the hearing, this portion of the affidavit seems to be referring to the information from the hotel registration card (Doc. 32 at 17) which, as discussed, only "listed" Ross' vehicle in the sense that it listed a Kia with California plates (like Ross' vehicle), but one with a different license plate number than Ross' vehicle.

5

did the affidavit include the text message from Ross asking Hill to find a different hotel for them.

The search warrant and application described the car accurately except for a typo spelling Kia: they described the vehicle as a "2016 Kai 4 door," listed the correct vehicle identification number (VIN number), and stated the vehicle was registered to Ross. Doc. 25-2 at 1-4. The affidavit attached to the search warrant application, however, listed the wrong license plate number for the vehicle but otherwise described it accurately as "a dark blue Kia 4 door with California plates . . . registered to [Ross]." Doc. 25-2 at 6.[5] Officer Albrecht testified that she inadvertently used the license plate number of the rental minivan parked at the Holiday Inn because she had multiple license plate numbers written down in her notes.

After officers obtained the search warrant for room 33 and for the Kia registered to Ross, officers first secured the people inside room 33: Ross, Watts, and another woman, Neiya Poellnitz. Ross was lying on the bed when officers entered the room. Later, while the room was being searched and Ross was handcuffed, Officer Davis spoke to Ross, asking him where he was from (California), where they had been traveling to, and what they had been doing. Officer Davis also asked whether a tattoo on Ross' arm that said "KC" stood for Kansas City. Ross reportedly responded with a smirk that it stood for Los Angeles Crips. No officer read Ross his *Miranda* warnings prior to this conversation.

Before officers searched Ross' car as authorized by the search warrant, Officer Yaneff, a K-9 officer, conducted a drug detection dog sniff of the vehicle with his K-9 Cash. Cash gave a positive alert for drugs on the driver's side of the vehicle near the driver's-side door and quarter panel.[6] When officers searched the Kia registered to Ross, they discovered two pounds of methamphetamine under the hood on the driver's side.

---

[5] The affidavit also mentions a "gray 2016 Kia 4 door with California plates" parked at Monell's father's residence – the vehicle Hill had driven that had already been searched earlier in the day (although this fact is not mentioned in the affidavit). Doc. 25-2 at 6. The affidavit concludes by requesting to search "the 2016 Kia," which could refer to Ross's vehicle or the vehicle driven by Hill. Doc. 25-2 at 7. Any confusion was resolved by the search warrant and application describing the vehicle to be searched as the one registered to Ross.

[6] Officer Yaneff admitted that in his police report of the drug dog sniff, he documented that the sniff was conducted on a vehicle registered to Poellnitz (not Ross), and he listed the wrong license plate and VIN numbers for the vehicle. He explained that earlier in the day, he had

Doc. No. 40 at 3-8 (footnotes in original). Ross takes no issue with Judge Mahoney's summary of the facts. Therefore, I adopt them without modification.

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

---

conducted a drug dog sniff of the Kia parked at Monell's father's house (the vehicle Hill had been driving) and that he accidentally listed this vehicle's information in his report instead of the correct information. I credit his testimony that a sniff was done of Ross' vehicle "parked in front of the door of the [motel room] that [officers] were executing the search warrant on . . . . [a]t the Town and Country Motel," Doc. 32 at 67, despite the contrary information contained in his report.

7

*Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.  DISCUSSION

Ross' motion and amended motion to suppress raise the following issues:

1. Whether probable cause existed to issue the search warrant for room 33

2. Whether probable cause existed to issue the search warrant for the vehicle (particularly because it stated the incorrect license plate number)

3. Whether the dog sniff was sufficient to establish probable cause to search Ross' vehicle (particularly because the vehicle listed in the police report for the sniff is not the vehicle registered to Ross)

4. Whether statements made by Ross during the search of room 33 should be suppressed due a *Miranda* violation

*See* Doc. No. 29 at 2. Judge Mahoney concluded that probable cause existed to issue the search warrant for room 33 and the vehicle. She also concluded that the warrant issued for the Kia described the vehicle with sufficient particularity despite the error describing it as a "Kai" and the incorrect license number in the supporting affidavit. In any event, she found that the good faith exception to the warrant requirement under *United States v. Leon*, 468 US. 897 (1984) would apply despite any flaws in the application and affidavit for the vehicle and room 33 search warrant. Moreover, the automobile exception would apply to the search of the vehicle and the dog sniff provided the requisite probable cause.

While Yaneff admitted he listed the wrong vehicle in his report regarding the canine sniff, Judge Mahoney credited his testimony that the sniff was done on Ross' vehicle "parked in front of the door of the [motel room] that [officers] were executing the search warrant on . . . . [a]t the Town and Country Motel." *See* Doc. No. 40 at 8 (citing Doc. 32 at 67). She recommends the amended motion to suppress be denied on these issues. With regard to Ross' statement about his tattoo in response to Officer Davis' question, Judge Mahoney recommends this statement be suppressed because it was obtained in violation of Ross' *Miranda* rights.

Ross objects to Judge Mahoney's conclusions regarding probable cause to support the search warrant for the vehicle and room 33, the application of the good faith exception to those searches and the application of the automobile exception. I will review those issues de novo. *See* Fed. R. Crim. P. 59(b). Neither party objects to Judge Mahoney's recommendation to suppress Ross' pre-*Miranda* statement. I will review that issue for clear error. *See, e.g.*, *Grinder*, 73 F.3d at 795. Because Ross' objections mirror Judge Mahoney's organization of the issues, I will address them in the same fashion.

### A. *Probable Cause in Support of Search Warrant for the Vehicle and Room 33*

In his motion and amended motion to suppress, Ross makes three primary arguments related to the search warrant for the vehicle and room 33. First, he argues that probable cause did not exist for either search because nothing connected him to the actions of Hill and Monell except the vague text messages he sent to Hill, which provided no indicia of criminal activity. With regard to the vehicle specifically, he argues the warrant lacks sufficient particularity of the vehicle to be searched because it describes it as a "Kai" and the affidavit in support of the warrant contains the wrong license plate number. With regard to the room, Ross argues he had a reasonable expectation of privacy in the room, even though he was not the registered guest and that, again, the warrant application lacked probable cause to connect him and the room to Hill's drug activities.

9

Judge Mahoney began her analysis by describing the legal standards for probable cause. Doc. No. 40 at 8-9. She then addressed Ross' argument that the only evidence connecting him to the drug deal between Hill and Monell were his text messages to Hill, which, he argues, do not implicate him in a methamphetamine conspiracy. *Id.* at 9. Judge Mahoney reasoned that the text messages, coupled with the surrounding circumstances described in the affidavit, were sufficient to establish probable cause as to Ross' involvement. *Id.* at 10. These included the fact that officers knew Hill traveled from California and was supposed to deliver five pounds of methamphetamine to Monell. Monell had also used "they" when describing who was delivering the methamphetamine. *Id.* It was also reasonable for officers to infer from the content of Ross' text messages to Hill that he was not a mere associate of Hill's, but was involved in the planned delivery of methamphetamine. *Id.*

Moreover, officers found a car registered in Ross' name with a California address at a local motel close to Monell's father's residence – the location for the planned methamphetamine exchange. *Id.* The affidavit also explained that based on training and experience, officers knew that drug dealers often show up at the buy location without the drugs because they want to see the money first, but keep the drugs nearby for quick retrieval. *Id.* (citing Doc. 25-2 at 7). Judge Mahoney concluded:

> The text messages in combination with this other evidence provided probable cause of Ross' involvement in the drug conspiracy. More than 'mere association' with a known drug dealer is involved here: officers could reasonably infer that Ross had traveled from California with Hill to transport methamphetamine (distinguishing Ross from other friends and relatives of Hill's who had not traveled from California to Sioux City and had no involvement in the planned delivery of methamphetamine to Monell). The facts in the affidavit establish a "substantial basis" for concluding probable cause existed that Ross was involved in the drug deal involving Hill and Monell.

*Id.* Judge Mahoney further concluded that even if the facts in the warrant were insufficient to connect Ross to the methamphetamine delivery from California, the

officers had additional information that was not included in the warrant that would trigger the good faith exception outlined in *Leon*. *Id*. at 10-11. For instance, Judge Mahoney noted that Ross had threatened to hit the road if Hill did not respond, which did not exactly indicate innocent conduct. *Id*. at 11. Monell had also referred to his methamphetamine sources as "his guys," indicating that more people than Hill were involved. *Id*. The confidential informant also reported to officers that Monell had stated his "California guy" was staying at a hotel waiting for money. *Id*. at 11-12. Finally, a search of Hill's vehicle did not reveal a "large amount" of methamphetamine, suggesting that an additional person may have been stashing the drugs. *Id*. at 12. Judge Mahoney concluded these additional facts further supported a finding of probable cause of Ross' involvement in the drug conspiracy and demonstrated the officers' good-faith reliance on the warrant. *Id*.

In his objections, Ross again argues that there was no nexus between himself and the criminal activity. He argues that none of the text messages produced incriminating material or exposed any criminal activity by Ross. He also argues that officers were not informed that Ross was involved in the interactions between Monell and Hill. Ross insists that Monell's statement that his "Cali guy" was waiting for money in a hotel and Hill's statement that "they" were coming soon to deliver the methamphetamine are too vague to establish probable cause to support a search warrant for Ross' vehicle and room 33.

I find that Judge Mahoney thoroughly considered these arguments in her R&R. Based on my de novo review, I agree with her analysis, *see id*. at 8-12, that the officers could draw a reasonable inference that Ross was connected to the drug transaction based on the totality of the circumstances. *See United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) ("Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, [the Eighth Circuit] has also recognized that law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant.'"). This objection is overruled.

### 1. *Vehicle*

Judge Mahoney next addressed Ross' arguments that were specific to the search of the vehicle. Ross argues that the warrant to search vehicle was invalid because the warrant and application described the vehicle to be searched as a "Kai" (instead of a Kia) and that the supporting affidavit listed the wrong license plate number for the vehicle to be searched. Doc. No. 40 at 12. Judge Mahoney discussed the applicable standards related to search warrants for vehicles. With regard to the warrant itself, she found that the typographical error ("Kai" instead of Kia) was not dispositive. *Id*. at 13. She reasoned that the warrant contained other accurate identifying information including the VIN number, the fact that the vehicle was registered to Ross in California and that it was a 2016 "4 door." *Id*. She also concluded that because there is no "Kai" model of car in existence, the probability of a mistaken search was negated. *Id*. For these reasons, she concluded that the warrant identified the car to be searched with sufficient particularity. *Id*.

Judge Mahoney then addressed the fact that the affidavit contained the wrong license plate number for the vehicle.[7] *Id*. at 14. Despite this mistake, the affidavit provided other accurate information including that the vehicle was a "dark blue Kia 4 door with California plates" registered to Ross and discovered at the Town and Country Motel. *Id.* (citing Doc. 25-2 at 6-7). Judge Mahoney concluded that this information, in addition to the fact that the officers were aware of only one vehicle registered to Ross with the correct VIN number described in the warrant, provided sufficient particularity in describing the vehicle to be searched. *Id*.

Judge Mahoney further reasoned that even if the mistaken license plate number would render the affidavit not sufficiently particular in describing the vehicle to be searched, the good faith exception would apply. *Id*. Officers kept Ross' vehicle under

---

[7] The license plate listed in the affidavit was for a minivan with a California plate that officers had previously found at the Holiday Inn in Sioux City, but had determined was not connected to Ross.

surveillance from the time it was discovered at the Town and Country Motel parking lot until the execution of the search warrant. Officers executing the search warrant also had personal knowledge that Ross' vehicle was the vehicle intended to be searched and his was the only vehicle searched. *Id.* For these reasons, Judge Mahoney concluded that any deficiency in particularity did not require suppression under the good faith exception. *Id.*

In his objections, Ross again argues that the incorrect license plate number contained in the affidavit, and the identification of the vehicle as a "Kai" in the warrant and application, demonstrate that the warrant did not describe the vehicle to be searched with sufficient particularity. The only additional authority he cites is *United States v. Hamilton*, 591 F.3d 1017, 1024 (8th Cir. 2010), for the general proposition that the particularity requirement is satisfied by including the items to be seized in an affidavit that is adequately referenced in the search warrant. He further argues that the good faith exception does not apply because it was unreasonable for officers to rely on a warrant that lacked particularity, contained inconsistencies and did not provide objective probable cause.

I find that Judge Mahoney thoroughly considered these arguments in her R&R. Based on my de novo review, I agree with her analysis that the search warrant and supporting documents sufficiently identified the vehicle to be searched and that the good faith exception would otherwise apply. *See id.* at 12-15. This objection is overruled.

### 2. *Room 33*

Judge Mahoney next addressed Ross' arguments specific to the search of room 33. First, she analyzed whether Ross had a reasonable expectation of privacy in room 33 and concluded that he did. *Id.* at 15-18. Second, she described the information in the affidavit that linked Ross to the Town and Country Motel. This information included the fact that his car was discovered in the motel parking lot and the motel was located within a mile of the "meet location" (Monell's father's home). *Id.* at 18. The officers found this

13

significant based on their training and experience that drug dealers often want to see the money before providing the drugs, but keep the drugs nearby for quick retrieval. *Id.* Judge Mahoney stated that the only information linking Ross to room 33 however, was that the room was registered to someone from California and "listed Ross' vehicle."[8] *Id.* She noted, however, that Ross did not challenge this aspect of the affidavit or argue that the affidavit failed to connect him to the motel room. *Id.* He argued only that no evidence connected him to criminal conduct, which Judge Mahoney rejected for the reasons described above. *See supra* at 9-10.

While the affidavit incorrectly stated that the reservation "listed Ross' vehicle," Judge Mahoney noted that Ross did not argue this was a deliberate falsehood or made with reckless disregard for the truth – the standard necessary for a court to disregard a statement in an affidavit when determining probable cause. *Id.* at 18-19 (citing *Franks v. Delaware*, 438 U.S. 154, 156-57, 171-72 (1978)). If the mistake was due to officer negligence, Judge Mahoney stated that the *Leon* good faith exception applies and the court must determine, based on the totality of the circumstances, whether the officer's execution of the search warrant was objectively reasonable based on the remainder of the information in the search warrant and any information known to the officers that was not presented to the issuing judge. *Id.* at 19.

Under this framework, Judge Mahoney found that the officers relied in good faith on the search warrant for room 33. She reasoned that in addition to the information from the registration card, officers knew that Ross' car was parked directly in front of room 33 and there were no other vehicles nearby. *Id.* They also knew Ross had sent text messages to Hill asking him to find "us" another hotel and stating "we" are leaving if Hill did not respond. Judge Mahoney concluded officers could reasonably infer that this meant Ross was not staying in a hotel room alone (making it more likely that he was

---

[8] As Judge Mahoney points out, the affidavit did not clarify that the registration card listed a Kia with California plates, like Ross' vehicle, but one with a different license plate number. Doc. No. 40 at 18 (citing Doc. Nos. 25-1 and 25-2 at 6-7).

staying in the room registered to a woman from California). *Id.* Also, an officer conducting surveillance saw a person whom he believed to be Ross emerge from the area near Ross' car and room 33. *Id.* Officers knew from Ross' text messages that he was staying at a hotel and could reasonably infer he was staying at the Town and Country Motel, since that is where his car was found. *Id.* Finally, Judge Mahoney reasoned that officers knew the methamphetamine was not in Hill's car, making it more likely that it was located in Ross' vehicle or hotel room. *Id.* at 19-20.

In his objections, Ross solely relies on his argument that only vague text messages connect him to Monell and Hill and that there was no direct tie between Ross and any criminal activity. As explained above, I find that Judge Mahoney thoroughly analyzed this issue and I agree with her analysis based on my de novo review. *See supra* at 9-10. This objection is overruled.

### B. *Search of Vehicle Under Automobile Exception*

Even if the warrant was insufficient, Judge Mahoney found that the search of the vehicle was justified under the automobile exception. Judge Mahoney first discussed the applicable law, which provides that when officers have probable cause to search a vehicle, a warrant is not required if the vehicle is being used on the highways or is readily capable of such use and is found stationary in a place not regularly used for residential purposes. Doc. No. 40 at 20 (citing *United States v. Long*, 900 F.2d 1270, 1277 (8th Cir. 1990)). Having already found that there was probable cause to search the vehicle, Judge Mahoney reasoned that Ross' vehicle was readily capable of being used on the highways, since he had apparently driven from Omaha to Sioux City the morning of the search. She also found that there could be no expectation of privacy in the motel parking lot. *Id.* at 20-22.

Moreover, Judge Mahoney noted that the drug dog sniff with a positive alert provided independent probable cause to search the vehicle.[9] *Id.* Therefore, she concluded that if the search of the vehicle could not be upheld under the search warrant or good faith exception, the officers were justified in conducting a warrantless search based on the drug dog sniff and automobile exception. *Id.* at 23.

In his objections, Ross concedes that his car met the mobility requirement, but again argues there was insufficient probable cause based on the same alleged lack of evidence tying Ross to any criminal activity or contraband. As explained *supra* at 9-10, I find that Judge Mahoney thoroughly analyzed this issue and I agree with her analysis based on my de novo review. This objection is overruled.

## C. *Miranda* Violation

Neither Ross nor the Government challenge Judge Mahoney's finding that Officer Davis' questioning of Ross during the execution of the search warrant amounted to interrogation and therefore, any statements Ross made were obtained in violation of his *Miranda* rights. I have reviewed this aspect of Judge Mahoney's R&R for clear error. I find that she applied the appropriate legal standards and agree with her analysis. Ross' statements to Officer Davis will be suppressed.

## IV. CONCLUSION

For the reasons set forth herein, defendant's objections (Doc. No. 51) are **overruled**. I hereby **accept** Judge Mahoney's R&R (Doc. No. 40). Defendant's motion (Doc. No. 22) to suppress and amended motion (Doc. No. 29) to suppress are both

---

[9] In making this finding she described the dog's training and certifications, but noted that Ross did not challenge this aspect of the sniff. She also credited Yaneff's testimony that the sniff was done on Ross' vehicle "parked in front of the door of the [motel room] that [officers] were executing the search warrant on . . . . [a]t the Town and Country Motel." *See* Doc. No. 40 at 8 (citing Doc. 32 at 67). Ross does not object to this finding.

16

**granted in part** and **denied in part.** The motions are **granted** as to Ross' pre-*Miranda* statements to Officer Davis. Any statements Ross made in response to questions from Officer Davis prior to being advised of his *Miranda* rights are hereby **suppressed**. The motions are **denied** in all other aspects.

**IT IS SO ORDERED.**

**DATED** this 23rd day of April, 2018.

_____
Leonard T. Strand, Chief Judge